SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, AS EXECUTOR OF THE LAST WILL AND TESTAMENT OF HOMER G. DAY, DECEASED, (ESTATE OF HOMER G. DAY), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91601. Promulgated March 15, 1940.

*Richard P. Crenshaw, Jr., Esq.,* for the petitioner.
*Harold F. Noneman, Esq.,* for the respondent.

OPINION.

TYSON: This proceeding involves a Federal estate tax deficiency of $1,420.42, resulting from the respondent's determination that the value of the corpus of two trusts created by decedent *inter vivos* is includable in his gross estate under the provisions of section 302 (c) and (d) of the Revenue Act of 1926, as amended. ' Petitioner assigns error in such determination and alleges that the decedent's estate is entitled to a refund of estate tax of $22.35 plus interest from November 15, 1935.

The proceeding has been submitted upon facts admitted by the pleadings, oral testimony, and a stipulation of facts embracing certain exhibits, which stipulation is included herein by reference as a part of our findings of fact.

The petitioner, a Maryland trust company, is the sole executor of the last will and testament of Homer G. Day, who was born on January 12, 1886, and died on May 27, 1935, a resident of the City, County, and State of New York.

On or about April 6, 1929, and February 1, 1930, the decedent herein transferred to petitioner, as trustee, certain property under two written trust instruments executed and delivered by decedent on those dates, respectively. Neither of those transfers in trust was made in contemplation of death.

Each of the trust instruments provided that the net income from the principal of the trust should be paid to the grantor (decedent herein) during his lifetime and that after his death the income, and eventually the principal, of the trust should be paid to designated

persons in the manner therein provided. Each trust instrument further provided as follows:

The right to revoke this Deed in whole or in part or to alter or change any of its terms and provisions is hereby expressly waived by me, except only in the event I should marry, in which event the right is reserved to me from time to time to revoke the trust in whole or in part or to alter or change any of its terms or provisions, * * *

At the time of the decedent's death he was 49 years of age and he had never married and neither of the trusts involved herein had been altered, amended, or revoked. The petitioner herein is still administering the trust property in accordance with the terms of the trust instruments.

On May 27, 1935, the date of decedent's death, the value of the property subject to the trust instrument dated April 6, 1929, was $33,310.18 and the value of the property (other than insurance payable to the trustee) subject to the trust instrument dated February 1, 1930, was $9,154.19.

In determining the deficiency here involved, the respondent included in the decedent's gross estate the above stated values of the properties transferred under the two trust instruments. Respondent contends, *inter alia*, that the decedent's *inter vivos* transfers in trust were "intended to take effect in possession or enjoyment at or after his death" within the meaning of section 302 (c) of the Revenue Act of 1926, as amended by section 803 of the Revenue Act of 1932.[1] Petitioner contends that the transfers were complete when made; that at date of his death the decedent did not have a presently existing power of revocation because his reserved power was conditioned upon the remote contingency of his marriage, which never happened, and, further, that the decedent reserved only a mere possibility of reverter of the principal of the two trusts.

In our opinion, the broad principle of Federal estate tax law announced by the Supreme Court in *Helvering* v. *Hallock*, 309 U. S. 106, is controlling here. The Court there held that section 302 (c) of the Revenue Act of 1926, as amended, relating to *inter vivos* transfers "intended to take effect in possession or enjoyment at or after his death", embraces an *inter vivos* transfer of property where the instrument making such transfer provides for a possible return or reverter of the property to the grantor upon a contingency terminable at his death; and this irrespective of the

---

[1] The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

    *        *        *        *        *

  (c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, * * *

technical form of conveyance used by the grantor to hold the ultimate disposition of his property in suspense until his death.

In the instant case we need not inquire into the character of the grantor's (decedent's) reserved power of revocation, i. e., whether it was a presently existing power or a power conditioned upon the happening of some future contingency. Here the interests of the beneficiaries (other than the life interest of the grantor decedent) under the two trust instruments were, by reason of the death of the grantor and not until then, freed from the possibility of a reverter of the principal of the trusts to the grantor and also not until the death of the grantor could the beneficiaries acquire dominion over the income or principal of the trusts—a dominion which they did not have prior to the grantor's death, as was also true in the *Hallock* case, *supra*. Here there was the possibility that a reverter of the principal of the trusts could be effectuated by the grantor's marriage and by his revocation of the trusts thereafter. Thus, because of the effect of grantor's death thereon his transfers in trust of the property here involved were "intended to take effect in possession or enjoyment at or after his death" within the meaning of section 302 (c) of the Revenue Act of 1926, as amended, *supra*, and the value of the property embraced in the two trusts is to be included in the decedent's gross estate.

*Decision will be entered for the respondent.*